**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **KLEIN TOOLS, INC.**, a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) | Case No: 1:24-cv-2249 |
| v. | ) ) | JURY TRIAL DEMANDED |
| **JJS CORPORATION**, a Korean corporation, and **JOHN DOES 1-10**, individually or as corporations/business entities, | ) ) ) ) | |
| Defendants. | ) ) | |

**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR**
**VIOLATION OF 15 U.S.C §§ 1114, 1125(A), AND RELATED STATE CLAIMS**

Plaintiff Klein Tools, Inc. ("Klein" or "Plaintiff") brings this action against defendants JJS Corporation and John Does 1-10 (collectively, "Defendants") for: (1) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a); (2) unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); (3) violation of the Illinois Uniform Deceptive Trade Practices Act; (4) common law trademark infringement; and (5) tortious interference with existing contracts and business relationships. These claims arise from Defendants' misappropriation of Klein's trademarks in connection with Defendants' unlawful sale on the Internet of materially different and non-genuine products bearing Klein's trademarks. In support of its complaint, Klein alleges as follows:

**PARTIES**

1.      Klein is a corporation, organized under the laws of Delaware, with its principal place of business in Lincolnshire, Illinois.

2.      JJS Corporation ("JJS") is a Korean corporation. JJS operates or assists in the operation of an online storefront on www.amazon.com ("Amazon") that is currently called

"Lowest price." (the "Amazon Storefront"). The Amazon Storefront can be accessed at https://www.amazon.com/sp?seller=A2EQO4M85R1051. JJS sells infringing products bearing Klein's trademarks through the Amazon Storefront and does business throughout the United States through the Amazon Storefront, including in Illinois.

3.      According to contact information that JJS lists for itself on the Amazon Storefront, JJS is located in Seoul, Korea:

**Detailed Seller Information**

**Business Name:** JJS Corporation
**Business Address:**
220, Yeongsin-ro, Yeongdeungpo-gu
KNK Digital Tower 1404 ho
Seoul
Seoul
07228
KR

4.      JJS has also provided this same address on its application for registration of a trademark, FITBULL (U.S. Serial. No. 97261622), that JJS has submitted to the United States Patent and Trademark Office. Accordingly, upon information and belief, the principal place of business of JJS is in Seoul, Korea.

5.      Klein believes that other individuals or entities may be responsible for the events and occurrences referred to herein or be otherwise interested in the outcome of the dispute. The true names, involvement, and capacities, whether individual, corporate, associated, or otherwise of these individuals or entities are unknown to Klein. Therefore, Klein sues these defendants by the fictitious names John Does 1 through 10. When the true names, involvement, and capacities of these parties are ascertained, Klein will seek leave to amend this Complaint accordingly. If Klein does not identify any such parties, it will dismiss these defendants from this action.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.  Klein's federal claims are predicated on 15 U.S.C. §§ 1114 and 1125(a), and its claims arising under the laws of the State of Illinois are substantially related to its federal claims such that they form part of the same case or controversy under Article III of the United States Constitution.

7.     This Court has personal jurisdiction over Defendants because they have expressly aimed tortious activities toward the State of Illinois and established sufficient minimum contacts with Illinois by, among other things, advertising and selling substantial quantities of infringing products bearing Klein's trademarks to consumers within Illinois through a highly interactive commercial website, with knowledge that Klein is located in Illinois and is harmed in Illinois as a result of Defendants' sales of infringing products to Illinois residents.  Defendants know that Klein is located in Illinois, among other reasons, because they received cease-and-desist letters informing them that Klein is located in Illinois and is harmed in Illinois by their unlawful actions.  Klein's claims arise out of Defendants' substantial and regular sales of infringing products bearing Klein's trademarks to Illinois residents.

8.     Alternatively, if Defendants are not subject to jurisdiction in any state court of general jurisdiction, this Court has personal jurisdiction over Defendants under Federal Rule of Civil Procedure 4(k)(2) and the Due Process Clause because Defendants have purposefully availed themselves of the privilege of conducting activities and causing a consequence in the State of Illinois by advertising and regularly selling infringing products bearing Klein's trademarks to consumers within Illinois through Amazon, a highly interactive commercial website.  Klein's claims arise out of Defendants' sales of infringing products to Illinois residents.

9.     Defendants' sales of infringing products bearing Klein's trademarks into Illinois have included, but are not limited to, a sale of an infringing product to Klein's counsel in Chicago, Illinois.  Defendants structure their sales activity to invite consumers from Illinois to purchase from Defendants' Amazon Storefront, and on or about March 6, 2024, Defendants caused one infringing product bearing Klein's trademarks to be delivered to Klein in Chicago after the product was purchased from Defendants' Amazon Storefront.

10.     In addition to their sale to Klein, Defendants have also sold, and continue to regularly sell, a high volume of other infringing products bearing Klein's trademarks into Illinois to other Illinois residents.

11.     Venue is properly found in this judicial district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims herein occurred within this judicial district, or in the alternative because a Defendant is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

### Klein and Its Trademarks

12.     Klein was founded in 1857 in Chicago by German immigrant Mathias Klein and has continued as a family business for six generations.  For over 160 years, Klein has remained dedicated to professional tradesmen worldwide with a commitment to manufacturing the world's finest hand tools right here in America.

13.     Klein is a leading manufacturer of hand tools and related accessories used in the electrical, maintenance, construction industries ("Klein products").

14.     Klein allows its products to be sold to end-user consumers in the United States only by sellers whom Klein has expressly authorized to sell Klein products ("Authorized Sellers").

15.     Klein allows Authorized Sellers to sell Klein products only in approved channels and requires Authorized Sellers to abide by agreements, policies, and other rules that impose requirements relating to quality controls, customer service, and other sales practices (collectively, the "Klein Rules").

16.     Klein devotes a significant amount of time, energy, and resources toward protecting the value of its brands, products, name, and reputation.  By allowing end-user consumers to purchase Klein products only from Authorized Sellers who are required to follow the quality controls and other requirements in the Klein Rules, Klein ensures that consumers receive products that are subject to its quality controls and maintains the integrity and reputation of the Klein brand. In the highly competitive tool industry, quality and customer service are a fundamental part of a consumer's decision to purchase a product.

17.     To promote and protect the Klein brand, Klein has registered numerous trademarks with the United States Patent and Trademark Office, including, but not limited to: KLEIN EST. 1857® (U.S. Reg. Nos. 0963,313, 1,630,868, 1,646,650, 5,719,385, 5,775,655 and 5,818,723); KLEIN® (U.S. Reg. Nos. 0619,012, 5,719,384, 5,769,778, and 5,894,611); GRIP-IT® (U.S. Reg. Nos. 1,133,007, 2,251,795, and 2,225,253); BULL DRIVER® (U.S. Reg. No. 1,274,870); KLEIN TOOLS® (U.S. Reg. Nos.1,640,855, 1,646,681, 1,653,472, 5,719,383,  and 5,763,623); TIP-IDENT® (U.S. Reg. No. 1,978,936); KLEIN-KOAT® (U.S. Reg. No. 2,253,267); KLEIN…FOR PROFESSIONALS…SINCE 1857® (U.S. Reg. No. 2,139,474); KLEIN KLEANERS® (U.S. Reg. No. 2,174,567); KLEIN-KURVE® (U.S. Reg. Nos. 2,644,284 and 2,856,629); HAVEN'S® (U.S. Reg. No. 3,017,086); EXPLORER® (U.S. Reg. No. 4,003,924); SCOUT® (U.S. Reg. No. 4,075,070);  JOURNEYMAN®  (U.S.  Reg.  Nos.  4,608,321,  4,616,110  and  4,616,111);

KATAPULT® (U.S. Reg. No. 5,271,087), and 10-FOLD® (U.S. Reg. No. 5,271,090) (collectively the "Klein Trademarks").

18.     The registration for each of the Klein Trademarks is valid, subsisting, and in full force and effect.

19.     Further, Klein's right to use many of the Klein Trademarks has become incontestable under 15 U.S.C. § 1065 because the trademarks have been in continuous use, Klein received no final legal decision issued against the trademarks, and Klein timely filed a Section 15 Declaration describing the trademarks' use.  Accordingly, these trademarks serve as conclusive evidence of Klein's ownership of the marks and of its exclusive right to use and direct the use of the marks in commerce and in connection with the sale and distribution of products bearing the marks identified in the registrations, as provided by 15 U.S.C. § 1115(b).

20.     Klein actively uses and markets the Klein Trademarks in interstate commerce.

21.     Consumers recognize the Klein Trademarks as being associated with Klein products.

22.     Due to the superior quality and exclusive distribution of Klein products, and because Klein is uniquely recognized as the source of high-quality products, the Klein Trademarks have considerable value.

**Online Marketplaces and the Challenge They Present to Klein Product Quality**

23.     E-commerce retail sales have exploded over the past decade.  From 2009 through the end of 2023, the percentage of total retail sales in the United States that were completed through e-commerce channels rose from 3.8% to 15.6%.  *E-Commerce Retail Sales as a Percent of Total Sales*, Federal Reserve Bank of St. Louis (February 20, 2024), https://fred.stlouisfed.org/series/ECOMPCTSA.

24. In 2022 consumers spent $1.03 trillion on e-commerce sales, a 7.7% increase from 2021. *See* Paul Conley, *U.S. ecommerce in 2022 tops $1 trillion for first time*, Digital Commerce 360 (February 17, 2023), https://www.digitalcommerce360.com/article/us-ecommerce-sales/. The massive growth in e-commerce is being driven largely by sales on online marketplaces. For example, in 2021 United States consumers spent more than $378 billion in e-commerce sales on Amazon, which was an 18.8% increase from 2020 and 43.5% of total e-commerce sales in 2021.

25. While online marketplaces have created a great deal of opportunity, they also greatly challenge a brand owner's ability to control the quality and safety of its products.

26. Unlike when purchasing products at a brick-and-mortar store, consumers who purchase products through online marketplaces cannot touch, inspect, or interact with products before purchasing them. Instead, consumers must trust that the product they receive from an online order will be authentic and of the quality they expect and typically receive from the manufacturer.

27. Online marketplaces have an exceedingly low barrier to entry, do not require sellers to be authorized sellers of the products they sell, and do not require sellers to disclose to consumers whether they are an authorized or unauthorized seller. As a result, any person who is able to obtain a brand owner's products through unauthorized diversion can sell the products on online marketplaces while concealing that they are an unauthorized seller who is outside of, and does not abide by, the brand owner's quality controls.

28. Online marketplaces are overrun by unauthorized sellers who have no relationship with (or obligations to) brand owners who exercise quality controls over their products sold by authorized sellers. It is unfortunately common for unauthorized sellers to sell diverted products on online marketplaces that are of lesser quality than products sold through brand owners' authorized channels. *See* Scott Cohn, *Greed Report: Your quest for savings could land you in the*

*"gray market,"* CNBC, Sept. 8, 2016, https://www.cnbc.com/2016/09/08/greed-report-your-quest-for-savings-could-land-you-in-the-gray-market.html; Alexandra Berzon et al., *Amazon Has Ceded Control of Its Site. The Result: Thousands of Banned, Unsafe or Mislabeled Products*, THE WALL STREET JOURNAL, Aug. 23, 2019, https://www.wsj.com/articles/amazon-has-ceded-control-of-its-site-the-result-thousands-of-banned-unsafe-or-mislabeled-products-11566564990. It is also common for unauthorized sellers to sell products that are previously used—including products retrieved from dumpsters—as "new" on online marketplaces. *See* Khadeeja Safdar et al., *You Might Be Buying Trash on Amazon—Literally*, THE WALL STREET JOURNAL, Dec. 18, 2019, https://www.wsj.com/articles/you-might-be-buying-trash-on-amazonliterally-11576599910.

29.     The business press has also reported extensively on how there is an "epidemic" of counterfeit products being sold on online marketplaces that diverters are exploiting because they know consumers trust marketplaces and think the products they are buying through the marketplaces are genuine. *See* Spencer Soper, *Amazon Gets Real About Fakes*, Bloomberg, Nov. 28, 2016, https://www.bloomberg.com/news/articles/2016-11-28/amazon-gets-real-about-fakes; Jay Greene, *How Amazon's quest for more, cheaper products has resulted in a flea markets of fakes*, THE WASHINGTON POST, Nov. 14, 2019, https://www.washingtonpost.com/technology/2019/11/14/how-amazons-quest-more-cheaper-products-has-resulted-flea-market-fakes/?arc404=true.

30.     The problem of sales of counterfeit and other poor-quality products on online marketplaces has become so serious that, in November 2019, the United States Senate Finance Committee issued a bipartisan report on the issue. The Committee found that the rise of e-commerce has fundamentally changed how consumers shop for products and that, as e-commerce has grown, counterfeit goods and products that "violate a right holder's trademark or copyright"

are being sold at an accelerating rate on e-commerce platforms. The Committee concluded that these sales are a "significant threat" to rights holders' brands and to consumers, and that under current law it is up to rights holders to protect their intellectual property rights online. *See* Senate Finance Committee, *The Fight Against Fakes: How Statutory and Regulatory Barriers Prevent the Sharing of Information on Counterfeits*, Nov. 7, 2019, https://www.finance.senate.gov/imo/media/doc/The%20Fight%20Against%20Fakes%20%20(2019-11-07).pdf.

31. In 2020, the Department of Homeland Security published a report noting that online marketplaces can facilitate the sale of counterfeit goods and that "American consumers shopping on e-commerce platforms and online third-party marketplaces now face a significant risk of purchasing counterfeit or pirated goods." Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated Goods* (Jan. 24, 2020), available at https://www.dhs.gov/sites/default/files/publications/20_0124_plcy_counterfeit-pirated-goods-report_01.pdf, at 7. The report stated that consumers on online marketplaces cannot rely on traditional "red flag" indicators of counterfeits and "have been surprised to discover that upon completion of an online sales transaction, that the order will be fulfilled by an unknown third-party seller." *Id*. at 14-15, 38. To mitigate these problems, the report recommended "[s]ignificantly enhanced vetting of third-party sellers." *Id.* at 35.

32. In its 2018, 2019, 2020, 2021, and 2022 annual reports to its shareholders, Amazon acknowledged that third party sellers on its marketplace are selling products that are "counterfeit," "pirated," "stolen," or otherwise "materially different" from the product that was described to consumers. *See, e.g.,* Amazon.com, Inc., Annual Report (Form 10-K), at 8 (Feb. 2, 2023), *available at* https://d18rn0p25nwr6d.cloudfront.net/CIK-0001018724/336d8745-ea82-40a5-

9acc-1a89df23d0f3.pdf   Amazon conceded that these actions are "violating the proprietary rights of others" and warned its investors that it could be liable for "unlawful activities" of Amazon third-party sellers.

33.     Because brand owners have no relationship with or control over unauthorized sellers, brand owners have no ability to exercise their quality controls over products sold by unauthorized sellers or to ensure the products are safe and authentic.  A brand owner's inability to exercise control over the quality of its products can present serious risks to the health and safety of consumers.

34.     The structure, construction, and user interface of online marketplaces also pose threats to a brand owner's ability to maintain its goodwill, reputation, and brand integrity.

35.     When purchasing products on an online marketplace, customers are ordinarily not informed whether a seller of a product is authorized by the brand owner.  Additionally, the interface design of many online marketplaces causes consumers to falsely believe that they are always purchasing from the brand owner or, at minimum, from an authorized seller that is selling under the brand owner's oversight and with the brand owner's approval.  Consumers who purchase on Amazon are particularly likely to experience this confusion because, on Amazon, all sellers of a product are listed under a single product listing that states "Brand [name of brand]" immediately under the title of the product, even though many products are sold on Amazon by unauthorized sellers that have no relationship with the brand owner.

36.     For all of these reasons, a vast number of consumers purchase products on online marketplaces without recognizing that they purchased from an unauthorized seller that does not (and cannot) follow the brand owner's quality controls.

37.     When a consumer purchases on an online marketplace and receives a product that is damaged, defective, or of otherwise poor quality, the consumer is much more likely to associate the problem with the brand/manufacturer rather than the product seller.

38.     Online marketplaces also give disgruntled customers a powerful and convenient forum to air their grievances about problem products: online product reviews. Any consumer who is dissatisfied with a product received can post a review on the marketplace for all other consumers across the world to see. These reviews, which often remain permanently attached to products, will often criticize the brand rather than the marketplace seller that sold the product.

39.     Online product reviews significantly impact a brand's reputation. Survey results show that 82% of United States adults "sometimes" consult online reviews for information when they consider buying a new product online, and 40% "always" or "almost always" consult such reviews. Aaron Smith & Monica Anderson, *Online reviews*, PEW RESEARCH CENTER, Dec. 19, 2016, http://www.pewinternet.org/2016/12/19/online-reviews/.

40.     Studies and surveys consistently show that consumers place extraordinary trust in online product reviews. For instance, research has shown that 49 % of online consumers now trust online reviews as much as personal recommendations from friends and family. Jamie Pitman, *Local Consumer Review Survey 2022*, BRIGHTLOCAL, https://www.brightlocal.com/research/local-consumer-review-survey/. The mere presence of reviews on an online product page can also increase conversion by up to 270% when compared to product pages that do not display reviews. Tom Collinger, *How Online Reviews Influence Sales*, NORTHWESTERN UNIVERSITY, https://spiegel.medill.northwestern.edu/how-online-reviews-influence-sales/. Because consumers so heavily "rely on reviews when they're shopping online," the Federal Trade Commission has begun suing companies who post fake reviews of their products

11

on online marketplaces. Megan Henney, *FTC cracking down on fake Amazon reviews*, FOX BUSINESS, Feb. 28, 2019, https://www.foxbusiness.com/technology/ftc-cracking-down-on-fake-amazon-reviews (quoting a press release from the director of the FTC).

41.     Consumers also pay special attention to negative online reviews of products because negative reviews are generally outnumbered by positive reviews and consumers believe negative reviews are particularly trustworthy due to their scarcity. *See* Caroline Beaton, *Why You Can't Really Trust Negative Online Reviews*, THE NEW YORK TIMES, June 13, 2018 https://www.nytimes.com/2018/06/13/smarter-living/trust-negative-product-reviews.html. According to one study, 85% consumers will intentionally seek out negative reviews when shopping online. Faith Hinz, *The Growing Power of Reviews*, POWERREVIEWS, 2018, https://www.powerreviews.com/wp-content/uploads/2018/03/The-Growing-Power-of-Reviews.pdf. As a result, brands are especially harmed when consumers leave negative product reviews after purchasing from an unauthorized seller because the reviews will be widely viewed and deemed to be particularly accurate in describing a product's quality.

42.     Negative reviews also hurt a brand's placement in search results on Amazon and other search engines, as Amazon's search algorithm downgrades products it believes consumers are less likely to buy. Thus, poor reviews can create a downward spiral where downgraded search placement leads to reduced sales, which leads to search placement falling further. For all of these reasons, negative online reviews can be the death knell for a manufacturer's online product listings.

### Klein's Reputation and Goodwill Have Been Harmed By Numerous Online Reviews Written by Consumers Who Purchased Poor Quality Products From Unauthorized Sellers on Online Marketplaces

43.     Consumers who purchase from unauthorized sellers on online marketplaces frequently receive poor quality products or customer service and leave negative reviews on product

listings. These negative reviews injure consumer perceptions of a brand's quality and reputation, ultimately causing the brand to suffer damage to its goodwill and lost sales.

44.    Numerous consumers have written negative reviews of Klein products being offered for sale on online marketplaces. In these reviews, many of which appear on listings of products that have been offered for sale by Defendants, consumers have given misappropriated Klein products low "ratings" and complained of receiving products that were previously used, old, greasy, damaged, of poor quality, different from what had been advertised, and counterfeit.

45.    For example, Defendants have sold on Amazon the product seen in the screenshot below:



46.    As seen in the following sample screenshots of customer reviews, consumers have left negative reviews of this product complaining of receiving products that were previously used, counterfeit, and of poor quality:

 john

★☆☆☆☆ **Bought new. Sent used.**
Reviewed in the United States on February 28, 2023
Style: With Crimping   |   Verified Purchase
I dislike the fact that I was charged $40 for what I thought was a new tool. When I'm fact I was sent a used one with some ones name on it. Quality control at its finest.



 Sam harcher

★☆☆☆☆ **%100 fake not klein branded no fish tape pulling part on them either**
Reviewed in the United States on February 5, 2022
Style: With Fish Tape Pulling   |   Verified Purchase

These are fake not branded by klein and didnt have fish tape pulling part like i ordered very disappointing.

One person found this helpful

 Alex

★☆☆☆☆ **low quality**
Reviewed in the United States on July 4, 2022

Style: With Crimping   |   Verified Purchase

The cutter broke (left side). Now i have a piece of junk.



2 people found this helpful

47.     Below is a screenshot of another Klein product that Defendants have sold on Amazon:



48. As seen in the following sample screenshots of customer reviews, consumers have left negative reviews of this product complaining of receiving products that were previously used, old, greasy out of the box, damaged, and of otherwise poor quality:







49.     Below is a screenshot of another Klein product that Defendants have sold on Amazon:



50. As seen in the following sample screenshots of customer reviews, consumers have left negative reviews of this product complaining of receiving products that were different from what had been advertised and counterfeit:



Jose P.

⭐☆☆☆☆ **Description is wrong**

Reviewed in the United States on July 17, 2022

**Verified Purchase**

These are not angled head.

2 people found this helpful



Ronan Nekomoto

⭐☆☆☆☆ **This is not a angle head side cutter.**

Reviewed in the United States on March 29, 2022

**Verified Purchase**

This is not a angle head side cutter. this is the wrong part # went on the klein website and found the right part #D2000-48

3 people found this helpful



Paul Fakatselis

⭐⭐☆☆☆ **These are knockoffs**

Reviewed in the United States on May 22, 2022

**Verified Purchase**

They don't cut like real Kline's. The ones you purchase from local stores are good quality and cut very well. These cut like they're 10+years old.

51. The foregoing reviews are only a sample of the negative reviews of the products depicted above and of other Klein products listed on Amazon that Defendants sell through their Amazon Storefront.

52. Amazon does not allow product reviews to identify the seller who sold the product that is the subject of the product review. Given that Defendants have sold a high volume of products bearing the Klein Trademarks on Amazon and are not subject to Klein's quality controls, however, it is exceedingly likely that some of the foregoing negative reviews—and the many other

17

similar negative reviews of Klein products that Defendants have sold on Amazon—were written by customers who purchased products bearing the Klein Trademarks from Defendants.

**Klein Has Implemented Quality Controls Throughout Its Authorized Channels of Distribution to Combat the Problems Presented By Online Marketplaces and Ensure Customers Receive the Genuine, High Quality Products They Expect From Klein**

53.     The above reviews show how sales of poor quality Klein products disappoint Klein's consumers and cause significant harm to the reputation and goodwill of Klein and its brands.  To protect itself and consumers from these harms, Klein implemented a quality control program that applies to all of its Authorized Sellers, including sellers that sell in a brick-and-mortar retail setting and sellers that sell online.

54.     The goals of Klein's quality control program are to minimize the likelihood that poor quality products reach consumers and ensure that consumers who purchase Klein products, including consumers who buy online, receive the high quality products and services they expect from products sold under the Klein name.  By preventing consumers from receiving poor quality products, the program both protects consumers from confusion and also protects the value and goodwill associated with the Klein Trademarks.

55.     Klein abides by its quality control requirements and requires its Authorized Sellers to abide by them as well.

56.     Klein's ability to exercise its quality controls is essential to the integrity and quality of Klein products, as well as the value of the Klein Trademarks and other intellectual property.

**Authorized Sellers May Sell Klein Products Only Through Specific Channels and Must Adhere to Klein's Quality Control and Customer Service Requirements**

57.     Klein maintains strict quality controls over Klein products by allowing Klein products to be purchased by end-user consumers only from Authorized Sellers.

58.     All of Klein's Authorized Sellers are permitted to sell Klein's products only in certain channels and are required to abide by the Klein Rules.  Thus, every Authorized Seller that sells Klein products is subject to Klein's quality control requirements.

59.     Klein carefully vets prospective Authorized Sellers to ensure that only those applicants with a reputation for and a commitment to quality are permitted to become Authorized Sellers of Klein products.

60.     The Klein Rules require Authorized Sellers to purchase Klein products only from Klein directly or from other Authorized Sellers.  This restriction ensures that the chain of custody can be established for all Klein products sold to consumers by Authorized Sellers, and thus prevents unsafe products, secondhand goods, or other low quality products from entering into the distribution chain.

61.     The Klein Rules also limit to whom and where Authorized Sellers may sell Klein products.  To prevent persons outside of Klein's quality controls from acquiring and reselling Klein products, the Klein Rules prohibit Authorized Sellers from selling Klein products to any third party who is not an Authorized Seller and who intends to resell the products.  Authorized Sellers are permitted to sell Klein products only to end-user consumers or, in certain circumstances, to other Authorized Sellers.

62.     Given the many perils of unauthorized online sales as described above, Authorized Sellers are also prohibited from selling Klein products on any website they do not themselves own and operate unless they first apply for and receive written approval from Klein.

63.     These restrictions are essential to Klein's ability to exercise its quality controls over Klein products because they prevent unauthorized sellers from obtaining and reselling Klein Products and allow Klein to know where all of its products are being sold online by Authorized

Sellers. If a quality issue arises through an online sale, Klein can identify the Authorized Seller that made the sale, contact the Authorized Seller, and address the issue immediately. Klein is unable to take such action against unauthorized sellers because it does not know who those sellers are and cannot obtain their cooperation in addressing any product quality issues that may arise.

64. In addition to restricting where and how Authorized Sellers can sell Klein products, the Klein Rules also require Authorized Sellers to follow numerous quality control requirements related to the inspection, handling, and storage of Klein products.

65. To ensure that customers receive the genuine and high quality products they expect from Klein, the Klein Rules require Authorized Sellers to inspect all Klein products for any damage, defects, evidence of tampering, and other non-conformance and remove all such products from their inventory. Authorized Sellers are prohibited from selling damaged or defective products, and are required to report any discovered defects to Klein to assist it with identifying any product quality issues.

66. The Klein Rules also require that Authorized Sellers store Klein products in a cool dry place, away from volatile chemicals, and in accordance with other guidelines issued by Klein. These requirements help ensure that Klein products are stored properly and are not damaged prior to being shipped to the consumer.

67. To avoid consumer confusion and ensure that customers receive genuine Klein products, Authorized Sellers must sell Klein products in their original packaging and are prohibited from relabeling, repackaging, or altering Klein products or any accompanying label, literature, or safety-related information. Authorized Sellers are prohibited from reselling any products as "new" that have been returned opened or repackaged.

68. Authorized Sellers are also prohibited from tampering with, defacing, or otherwise altering any identifying information on Klein products, including any serial number, UPC code, or other identifying information.

69. The Klein Rules give Klein the right to monitor and audit Authorized Sellers by inspecting their facilities and records relating to Klein products, to ensure their compliance with Klein's quality control requirements. During any such investigation, Authorized Sellers must disclose information regarding their handling procedures and the identities of all their sources of all Klein products. If Klein discovers that an Authorized Seller is failing to follow the Klein Rules, Klein has the right to cease selling its products to the Authorized Seller and to suspend or terminate its status as an Authorized Seller of Klein products.

70. Authorized Sellers also must communicate all safety information to consumers and cooperate with Klein with respect to any product recall or other consumer safety information dissemination effort conducted by Klein regarding Klein products.

71. The Klein Rules also require Authorized Sellers to provide various customer services to their customers. For example, Authorized Sellers must familiarize themselves with the features of all Klein products kept in their inventory so they can advise customers on the selection and safe use of Klein products, offer ongoing support to consumers, and promptly respond to consumer inquiries before and after the sale of genuine Klein products.

72. Klein's quality control and customer service requirements are legitimate and substantial and have been implemented so that Klein can control the quality of goods manufactured and sold under the Klein Trademarks, to protect consumers as well as the value and goodwill associated with the Klein Trademarks.

73.     Klein's quality control and customer service requirements are also material, as they are designed to protect consumers and prevent them from receiving poor quality and unsafe products.  Consumers would find it material and relevant to their purchasing decision to know whether a Klein product they were considering buying was being sold by an Authorized Seller who is subject to Klein's quality control and customer service requirements or whether the product is being sold by an unauthorized seller who does not abide by Klein's quality controls and over whom Klein is unable to exercise its quality controls.

### Given the Flood of Poor Quality Products Being Sold Online and Consumers' Inability to Inspect Such Products Before Purchase, Klein Imposes Additional Requirements on Its Authorized Sellers Who Sell Online

74.     As shown in the consumer reviews cited above, *see supra* ¶¶ 44-51, Klein products sold online are more susceptible to quality and authenticity problems as consumers cannot see products before buying them.  These problems are especially severe on online marketplaces such as Amazon, where sellers can conceal the fact that they are an unauthorized seller and many sellers may share a single product listing page.

75.     Given these heightened risks to consumer satisfaction and the value of its trademarks that are posed by online sellers, Klein imposes additional quality control requirements on all of its Authorized Sellers who sell Klein products online.

76.     The Klein Rules allow Authorized Sellers to sell Klein products to end-user consumers only through "Permissible Public Websites" and "Authorized Websites."  These rules allow Klein to oversee all Authorized Sellers who sell Klein products online.

77.     A "Permissible Public Website" is a website that: (1) is operated by an Authorized Seller in the Authorized Seller's own legal name or registered fictitious name, (2) is not a third-

party storefront on an online marketplace website; and (3) lists the Authorized Seller's mailing address, telephone number, and email address.

78.     Authorized Sellers must receive prior written approval from Klein before they can sell Klein products on any website that does not meet the criteria of a Permissible Public Website. To obtain this approval, Authorized Sellers must submit applications in which they provide information about their business, identify all their sources of Klein products, and list the specific websites where they wish to sell products. Applicants then undergo vetting by Klein that includes review of their business operating business record and online review history. A website that Klein permits an Authorized Seller to use through this process is called an "Authorized Website."

79.     The Klein Rules impose numerous additional requirements on Authorized Sellers who sell Klein products on Permissible Public Websites or Authorized Websites (collectively, "Authorized Online Sellers").

80.     For example, Authorized Online Sellers must use images of Klein products that are provided or approved by Klein and keep product descriptions up to date. Authorized Online Sellers are also prohibited from advertising any Klein product they do not carry in their inventory.

81.     The Klein Rules prohibit Authorized Online Sellers from selling anonymously and instead require them to state their business name and current contact information on all websites where they sell, while not giving any appearance that the website is operated by Klein or another third party. These requirements allow consumers of Klein products to understand the nature of the seller from whom they are purchasing and enable consumers to contact the seller if any quality issues arise. These requirements also allow Klein to protect the public from the sale of poor quality or counterfeit Klein products because it allows for easy detection of any Authorized Online Seller that sells poor quality or counterfeit goods.

23

82.     Authorized Online Sellers who sell Klein products on Authorized Websites may sell products only on the website(s) and under the name(s) specifically approved by Klein.  At Klein's request, Authorized Online Sellers must provide access to and copies of all web pages that make up any Permissible Website or Authorized Website where Authorized Online Sellers are selling Klein products.

83.     Unless otherwise approved by Klein, Authorized Online Sellers may not use any third-party fulfillment service to store inventory or fulfill orders for Klein products.  Authorized Online Sellers are also prohibited from using any fulfillment service that could cause customers to receive Klein products from other sellers' product stock when they purchase from Authorized Online Sellers.  These requirements ensure that the specific products that the Authorized Online Seller has that meet Klein's quality standards will be those that are shipped to the customer in fulfillment of an order, rather than other products that are outside of Klein's quality controls.

84.     All websites where Authorized Online Sellers sell Klein products must have a mechanism for receiving customer feedback, and Authorized Online Sellers must take appropriate steps to address any feedback received.  Authorized Online Sellers must also: (i) keep copies of all information related to customer feedback regarding Authorized Online Sellers' products and their responses; (ii) provide this information to Klein upon request; and (iii) cooperate with Klein in investigating negative online reviews related to sales of Klein products.

85.     The additional quality control requirements that Klein exercises over online sales of its products are legitimate and substantial and have been implemented to allow Klein to carefully control the quality of Klein products that are sold online and quickly address any quality issues that arise.

86.     Klein's additional quality controls are also material, as they have been implemented to ensure that consumers purchasing Klein products online receive genuine, high-quality Klein products that abide by Klein's quality controls.  Consumers purchasing Klein products online would find it relevant to their purchasing decision to know whether a product they are buying is vended by an Authorized Online Seller who is subject to, and abides by, Klein's quality controls.

### Genuine Klein Products Come with Klein's Warranties; Products Sold By Defendants Do Not

87.     Klein also provides customers who purchase genuine Klein products from Authorized Sellers with Klein's limited warranties (the "Klein Warranties").

88.     The Klein Warranties warrant Klein products against defects in material and workmanship under normal use for the applicable warranty period, subject to the conditions contained therein.  Depending on the Klein product, the warranty period ranges from one year from the date of purchase to the normal life of the product.

89.     Under the Klein Warranties, a customer can receive a product repair, replacement product, or refund if a product has a defect in materials or workmanship during the warranty period applicable to the product.  The complete Klein Warranties can be viewed at https://www.kleintools.com/content/warranty-product-group and are incorporated herein.

90.     Klein extends the Klein Warranties only to products that were sold by sellers who are subject to Klein's quality controls.  Because products sold by unauthorized sellers are not subject to Klein's quality controls and Klein cannot ensure the quality of such products, the Klein Warranties do not cover Klein products sold by unauthorized sellers, including Defendants.  For consumers to obtain benefits under the Klein Warranties, they must submit a proof of purchase showing that they purchased their product from an Authorized Seller.

25

**Defendants Are Not Authorized Sellers and Are Illegally Selling
Non-Genuine Products Bearing the Klein Trademarks**

91.     Because the unauthorized sale of Klein products over the Internet threatens the

reputation and goodwill associated with the Klein Trademarks, Klein actively monitors the sale of

its products online.

92.     In the course of this monitoring, Klein discovered that high volumes of products

bearing the Klein Trademarks were being illegally sold on Amazon through a storefront called

"Lowest price."

93.     Through investigation, Klein identified JJS as the operator of the "Lowest price."

Amazon storefront and a party who is responsible for the unlawful sale of products bearing the

Klein Trademarks through the storefront.  At the time of Klein's discovery of the storefront and

continuing to the time of filing, the listed "Business Name" of the operator of the Amazon

Storefront is "JJS Corporation," and the listed "Business Address" is inside the KNK Digital

Tower located in Seoul, Korea:

**Detailed Seller Information**

**Business Name:** JJS Corporation
**Business Address:**
    220, Yeongsin-ro, Yeongdeungpo-gu
    KNK Digital Tower 1404 ho
    Seoul
    Seoul
    07228
    KR

94.     Through investigation, Klein has confirmed that JJS Corporation is a Korean

corporation that has listed the KNK Digital Tower as its business address.

95.     Through investigation, Klein also discovered that JJS has applied for registration

of a trademark with the United States Patent and Trademark Office (FITBULL, U.S. Serial. No.

26

97261622).  On its application, JJS identified the KNK Digital Tower in Seoul, Korea as its address.

96.     Based on these findings, Klein believes that JJS is responsible, at least in part, for the operation of the Amazon Storefront.  However, discovery may reveal that additional individuals and/or entities are also responsible for the conduct complained of herein.

97.     On October 11, 2022, counsel for Klein sent a cease-and-desist letter to JJS by international delivery.  The letter explained that Defendants are infringing the Klein Trademarks by selling products through their Amazon Storefront that are materially different from genuine products sold by Klein's Authorized Sellers and that are not subject to, do not abide by, and interfere with Klein's quality controls.  The letter also explained that Defendants are tortiously interfering with Klein's contracts by purchasing products from Authorized Sellers, who are prohibited from selling products to persons or entities who are not Authorized Sellers and resell the products.  The letter also informed Defendants that Klein is located in Illinois, United States, is harmed in Illinois as a result of Defendants' illegal sales of infringing products bearing the Klein Trademarks, and that Defendants would be subject to personal jurisdiction in Illinois if they continued to engage in their illegal conduct and Klein filed suit.  Klein's letter demanded that Defendants permanently cease selling products bearing the Klein Trademarks and disclose every person and entity that provided Defendants with the products they have sold.

98.     Klein sent a second cease-and-desist letter to JJS by international delivery on February 6, 2023 that repeated the demands in Klein's October 11, 2022 letter.

99.     To date, Defendants have not responded to Klein's cease-and-desist letters and have continued to advertise and sell products bearing the Klein Trademarks through their Amazon Storefront.

27

100.    Defendants' disregard of Klein's cease-and-desist letters and continued sale of non-genuine products despite being informed of their unlawful conduct demonstrates that they are acting intentionally, willfully, and maliciously.

101.    Defendants have sold—and are continuing to sell—a high volume of infringing products bearing the Klein Trademarks through their Amazon Storefront.  Monitoring software estimates that Defendants have sold more than 1,500 infringing products through their Amazon Storefront for revenue in excess of $68,000.

102.    Upon information and belief, through their storefront on the highly interactive Amazon website, Defendants accept and fulfill orders from Illinois residents for products bearing the Klein Trademarks and cause substantial quantities of infringing products bearing the Klein Trademarks to be shipped to persons located in Illinois through the regular course of business.

103.    As of the time of filing, Defendants' Amazon Storefront is called "Lowest price." Amazon allows storefront operators to change the names of their storefronts, and Defendants have previously set the name of their Amazon Storefront as "Global Home Depot," "Gott Electronics," and "Now is the Cheapest" before changing the name to "Lowest price."  However, every storefront on Amazon is assigned a "Merchant ID number" that does not change over time even if the formal "name" of a storefront is changed.  The Merchant ID number for Defendants' Amazon Storefront is A2EQO4M85R1051.  Even if Defendants change the name of their Amazon Storefront again at some time in the future, their storefront can always be accessed at the following link that includes the storefront's Merchant ID number: https://www.amazon.com/sp?seller=A2EQO4M85R1051.

**Defendants Are Infringing the Klein Trademarks by Selling Products Bearing the Klein Trademarks That Are Not Subject To, Do Not Abide By, and Interfere With Klein's Quality Control and Customer Service Requirements**

104. Defendants are not Authorized Sellers of Klein products, are not subject to Klein's quality controls, and do not comply with the Klein Rules or the quality controls that Klein imposes on its Authorized Sellers.

105. Defendants, without authorization from Klein, have sold—and continue to sell—products bearing the Klein Trademarks through their Amazon Storefront. Defendants may also be selling products through additional channels that Klein has not yet discovered and cannot discover until it is able to take discovery.

106. Klein has implemented quality control and customer service requirements throughout its authorized channels of distribution. The products sold by Defendants are not genuine products because they are not subject to, do not abide by, and interfere with Klein's quality control and customer service requirements that Authorized Sellers must follow.

107. Klein's quality control and customer service requirements are legitimate and substantial. As a result of Defendants' sales of products that are not subject to, do not abide by, and interfere with these requirements, Klein has lost control of the quality of goods that bear its trademarks.

108. Defendants do not abide by Klein's quality control requirements because they have not provided Klein with their business information nor given Klein an opportunity to vet them to determine if they meet Klein's high standards for what it demands of its Authorized Sellers who sell Klein products on Authorized Websites. Instead, Defendants sell products online without Klein's authorization or oversight.

29

109.    Defendants do not comply with Klein's quality control requirements—and interfere with Klein's quality controls—because they have not disclosed to Klein where they sell Klein products online.  Defendants also do not provide customer feedback to Klein that relates to their sales of products bearing the Klein Trademarks or cooperate with Klein in investigating negative online reviews relating to their sales of products bearing the Klein Trademarks, as Authorized Online Sellers are required to do.  These actions prevent Klein from being able to detect, address, and resolve any quality control issues or negative reviews that arise out of Defendants' sale of products bearing the Klein Trademarks.

110.    Defendants also do not comply with Klein's quality control requirements—and interfere with Klein's quality controls—because they: (1) have not disclosed to Klein where they acquire products that bear the Klein Trademarks; and (2) have not given Klein the right to audit and inspect their facilities and records.  As a result, among other things, Klein cannot know if Defendants are: (i) sourcing products only from authorized sources; (ii) properly inspecting and storing products, and not selling poor quality products; (iii) selling products only in official and unaltered Klein packaging; (iv) improperly allowing products that have been returned or repackaged to be listed as "new" products; (v) not permitting their products to be commingled with products owned by other sellers, such that a customer could receive a product owned by another seller when purchasing from Defendants; and (vi) providing exceptional customer service and responding appropriately to feedback received from customers.  Klein also cannot obtain Defendants' assistance with any recall or consumer-safety information efforts that may arise related to any products they are selling or have sold in the past.

111.    Customers have written reviews of Defendants' Amazon Storefront in which they complained of receiving products that were previously opened and used, tampered with, missing

components, damaged, counterfeit, different from what customers had ordered, or of otherwise poor quality. Although Amazon has added comments to some of these reviews stating that Amazon takes "responsibility" for the "fulfillment experiences" described in the reviews, the issues and complaints that customers address in these reviews are clearly the fault of Defendants rather than a fulfillment problem, such as delivering a product to the wrong address, that could be attributable to Amazon rather than Defendants:[1]

| ⭐ | "~~Has no power out of box. Can stop anvil by hand~~" |
|---|---|
| | By Ricky N Forvour on March 15, 2024. |
| | **Message from Amazon:** This item was fulfilled by Amazon, and we take responsibility for this fulfillment experience. |

| ⭐ | "~~The box was damaged and this multimeter is used, not new~~" |
|---|---|
| | By Sourav on February 29, 2024. |
| | **Message from Amazon:** This item was fulfilled by Amazon, and we take responsibility for this fulfillment experience. |

| ⭐ | "~~Battery was not included Missing~~" |
|---|---|
| | By Kirt on February 18, 2024. |
| | **Message from Amazon:** This item was fulfilled by Amazon, and we take responsibility for this fulfillment experience. |

| ⭐ | "~~I ordered a Toto T5U99A.X two pack for $44.97. I was sent a Fluidmaster 400H two pack ($32.00.). I hope the $12.97 bait and switch was worth you reputation. Stay away. Can't be trusted.~~" |
|---|---|
| | Read less |
| | By AN Other on February 18, 2024. |
| | **Message from Amazon:** This item was fulfilled by Amazon, and we take responsibility for this fulfillment experience. |

| ⭐ | "~~Tour came without the cutter and the set screw incomplete is not a set~~" |
|---|---|
| | By Charles Bradley on January 19, 2024. |
| | **Message from Amazon:** This item was fulfilled by Amazon, and we take responsibility for this fulfillment experience. |

| ⭐ | "This is a fake tool. They come off as being authentic Milwaukee, but if you pay attention the model# is BBL-0. A true Milwaukee brand is 0884-20. Look at pictur…" |
|---|---|
| | Read more |
| | By PATRICK SKO on January 17, 2024. |

---

[1] When Amazon sellers utilize the "Fulfillment by Amazon" service, Amazon itself is responsible for shipping the items. At a third-party seller's request, Amazon is able to "strike" a negative review as attributable to Amazon, not the seller—even in situations where, as here, the issues are plainly related to the quality of the seller's product. *See* https://sell.amazon.com/fulfillment-by-amazon.

⭐☆☆☆☆ "Item was not in the original box (purched the exact same three pans the month before) This pan was an open item and was shipped in a plastic bag. Only the handle was protected by bubble wrap. Most likely got bumped around in traffic and arrived with the enamel coating chipped. This seller sent me an open box item. Requested to have it replaced and they sent me another open box pan. Terrible exp."

Read less

By Mori Seiki on January 8, 2024.

**Message from Amazon:** This item was fulfilled by Amazon, and we take responsibility for this fulfillment experience.

⭐☆☆☆☆ "The product photos as well as a description shows and mentions vacuum bag and some accessories. It clearly states no battery, bare tool, and clearly does not show battery in photos and yet you show all these extension pieces without any mention of "no vacuum bag or extensions included""

Read less

By william lanz on December 23, 2023.

**Message from Amazon:** This item was fulfilled by Amazon, and we take responsibility for this fulfillment experience.

⭐☆☆☆☆ "Very misleading description of product. Every picture shows nozzle. The discription of product says nozzle and inflator included, come to find out the nozzle and inflator is not included. You actually receive just the main unit which is useless without the attachments. Should be made clear in the description."

Read less

By Brent Clay on December 21, 2023.

**Message from Amazon:** This item was fulfilled by Amazon, and we take responsibility for this fulfillment experience.

⭐☆☆☆☆ "Sent a used unit without saying anything in the description of the ad"

By Almir Tokmanovic on November 25, 2023.

**Message from Amazon:** This item was fulfilled by Amazon, and we take responsibility for this fulfillment experience.

⭐☆☆☆☆ "Pill capsules were opened and the bottle is useless"

By Bogun on July 29, 2023.

**Message from Amazon:** This item was fulfilled by Amazon, and we take responsibility for this fulfillment experience.

⭐☆☆☆☆ "I ordered sets of 31 and they sent me the 19 sets and changed me for the price of 31 sets was very disappointing."

By Amazon Customer on April 24, 2023.

**Message from Amazon:** This item was fulfilled by Amazon, and we take responsibility for this fulfillment experience.

⭐⭐☆☆☆ "Package contained only the handle, no cutters."

By Lawrence on March 31, 2023.

**Message from Amazon:** This item was fulfilled by Amazon, and we take responsibility for this fulfillment experience.

112.    These reviews are only a sample of the negative reviews that customers have written about Defendants and their Amazon Storefront, and they are typical of the complaints made about the products sold and the customer service provided by unauthorized sellers on online marketplaces.  Klein allows its products to be sold only by Authorized Sellers who are subject to

its quality controls to prevent customers from suffering experiences like those described in the above complaints about Defendants.

113.     The negative reviews of Defendants' Amazon Storefront, along with the numerous negative customer reviews on Amazon of Klein products that Defendants have sold, *see supra* ¶¶ 44-52, show that Defendants are very likely not carrying out the quality-control inspection, storage, or handling requirements that Klein requires Authorized Sellers to follow for Klein products. Instead, Defendants are likely selling products bearing the Klein Trademarks to consumers that are previously used, tampered with, missing components, old, greasy, damaged, and counterfeit. These sales cause customers to write highly negative reviews of Klein products that harm Klein's reputation and hurt the placement of Klein products in search results.

114.     Defendants' failure to abide by the Klein Rules prevents Klein from exercising control over the quality of products Defendants sell bearing the Klein Trademarks. Unlike with its Authorized Online Sellers, Klein cannot monitor or audit Defendants to ensure they are complying with its quality controls or take any action to correct quality problems it discovers or is alerted to in products sold by Defendants.

115.     Through their unauthorized use of the Klein Trademarks, Defendants have misled—and continue to mislead—consumers into believing they are purchasing products with the same quality controls as genuine Klein products. In reality, however, the products that Defendants sell are materially different from genuine Klein products—and are not genuine products—because they are not subject to, do not abide by, and interfere with Klein's quality control and customer service requirements that Authorized Sellers must follow.

**Defendants Are Infringing the Klein Trademarks by Selling Products Bearing the Klein Trademarks That Do Not Come With the Klein Warranties**

116.     As set forth above, genuine Klein products purchased from an Authorized Seller come with the Klein Warranties.  However, Klein does not provide the Klein Warranties with products purchased from non-Authorized Sellers because it cannot ensure the quality of products sold by sellers that are not subject to its quality controls.

117.     Because Defendants are not Authorized Sellers and are thus not subject to Klein's quality control requirements, the products bearing the Klein Trademarks that Defendants sell do not come with the Klein Warranties.

118.     Because the products Defendants sell do not come with the Klein Warranties, they are materially different from genuine Klein products.

119.     The Klein Warranties are a material component of genuine Klein products. Consumers considering whether to purchase Klein products would find it relevant to their purchasing decision to know whether the product they are purchasing is covered by the Klein Warranties.  Consumers who purchase Klein products with the Klein Warranties receive the peace of mind that they are receiving a high-quality product, that Klein stands behind the product, and that if a defect occurs they can get a product repair, product replacement, or a refund.

120.     Defendants' unauthorized sale of non-genuine products bearing the Klein Trademarks is likely to, and does, create customer confusion because customers who purchase products from Defendants believe they are purchasing genuine Klein Products that come with the Klein Warranties when, in fact, they are not.

**Defendants Are Tortiously Interfering With
Klein's Agreements With Its Authorized Sellers**

121.     As discussed, Klein allows Klein products to be sold only by Authorized Sellers.

122.     Klein has entered into agreements with all of its Authorized Sellers that prohibit Authorized Sellers from selling Klein products to entities or persons who are not Authorized Sellers and who Authorized Sellers know, or reasonably should know, are going to resell the products.

123.     Defendants have sold and are continuing to sell a high volume of products bearing the Klein Trademarks on the Internet.  Klein has not itself sold any Klein products to JJS.  The only plausible way Defendants could be obtaining the volume of products they are reselling is by purchasing them from one or more Authorized Sellers.  Accordingly, upon information and belief, Defendants have purchased products from Authorized Sellers for the purpose of reselling them on the Internet.

124.     By purchasing products from Authorized Sellers and then reselling them on the Internet, Defendants caused and induced Authorized Sellers to breach their agreements with Klein.

125.     Defendants have known that Klein's contracts with its Authorized Sellers prohibit Authorized Sellers from selling products to non-Authorized Sellers, such as Defendants, whom the Authorized Sellers know or have reason to know are going to resell the products.

126.     Defendants have known of this prohibition since at least approximately October 11, 2022.  On that date, Klein mailed a cease-and-desist letter to JJS by international delivery explaining that Klein has agreements with all of its Authorized Sellers that prohibit them from selling Klein products to any person or entity that is not an Authorized Seller but intends to resell the products.

127.     Klein's letter also informed Defendants that, by purchasing Klein products from an Authorized Seller for the purpose of reselling them, they were causing a breach of the agreement

35

between Klein and its Authorized Seller and interfere with Klein's agreements and business relationships.

128.    Klein's October 11, 2022 letter also advised Defendants that if they continued to acquire products from Klein's Authorized Sellers and then resold the products, they would be liable for tortiously interfering with Klein's contracts and business relationships with its Authorized Sellers.

129.    Despite being provided this information, upon information and belief, Defendants intentionally, knowingly, and willfully interfered with Klein's agreements with its Authorized Sellers by inducing Authorized Sellers to breach their agreements and sell products to Defendants that Defendants resold on the Internet.

130.    In interfering with Klein's agreements, Defendants acted without justification and with a wrongful purpose.  Defendants purchased Klein products from Authorized Sellers —and in so doing, instigated a breach of Authorized Sellers' agreements with Klein—so that Defendants could unlawfully infringe upon and materially damage the value of the Klein Trademarks by reselling the products on the Internet, thereby committing an independent tort.

131.    Defendants are not parties to the agreements they caused Authorized Sellers to breach.

**Klein Has Suffered Substantial Harm as a Result of Defendants' Conduct**

132.    As set forth above, the unauthorized sale of products bearing the Klein Trademarks by unauthorized sellers such as Defendants has caused significant harm to the Klein brand.

133.    When a consumer receives a non-genuine, damaged, or poor-quality product from an unauthorized seller, such as Defendants, the consumer associates that negative experience with

Klein. As such, Defendants' ongoing sale of non-genuine products bearing the Klein Trademarks harms Klein and its brands.

134. Klein has suffered, and will continue to suffer, significant monetary harm as a result of Defendants' actions including, but not limited to, loss of sales, damage to its intellectual property, and damage to its existing and potential business relations.

135. Klein has suffered, and will continue to suffer, irreparable harm as a result of Defendants' actions, including, but not limited to, irreparable harm to its reputation, goodwill, business and customer relationships, intellectual property rights, and brand integrity.

136. Klein is entitled to injunctive relief because, unless enjoined by this Court, Defendants will continue to unlawfully sell non-genuine products bearing the Klein Trademarks, causing continued irreparable harm to Klein's reputation, goodwill, relationships, intellectual property, and brand integrity.

137. Additionally, Klein is entitled to injunctive relief requiring Defendants to return or destroy infringing products because without that remedy, Defendants may evade injunctive relief by transferring their infringing products to another reseller.

138. Defendants' conduct was and is knowing, reckless, intentional, willful, malicious, wanton, and contrary to law.

139. Defendants' willful infringement of the Klein Trademarks and continued pattern of misconduct demonstrate intent to harm Klein.

## FIRST CAUSE OF ACTION
### Trademark Infringement
### 15 U.S.C. §§ 1114 and 1125(a)(1)(A)

140. Klein hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

141. Klein is the owner of the Klein Trademarks.

142. Klein has registered the Klein Trademarks with the United States Patent and Trademark Office.

143. The Klein Trademarks are valid and subsisting trademarks in full force and effect.

144. Defendants willfully and knowingly used, and continue to use, the Klein Trademarks in interstate commerce for the purpose of selling non-genuine products bearing the Klein Trademarks without Klein's consent.

145. The products bearing the Klein Trademarks that Defendants sell are not authorized for sale by Klein.

146. Defendants' use of the Klein Trademarks in connection with their unauthorized sale of products is likely to cause confusion, cause mistake, or deceive consumers because it falsely suggests that the products offered for sale by Defendants are the same as genuine products legitimately bearing the Klein Trademarks and originate from, or are sponsored by, authorized by, or otherwise connected with Klein when they are not.

147. Defendants' use of the Klein Trademarks in connection with their unauthorized sale of products is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendants offer for sale are genuine Klein products.

148. The products sold by Defendants are not, in fact, genuine Klein products. The products sold by Defendants are materially different from genuine Klein products because, among other reasons, they are not covered by the Klein Warranties and are not subject to, do not abide by, and interfere with Klein's quality control requirements.

149. Defendants' unauthorized use of the Klein Trademarks has infringed upon and materially damaged the value of the Klein Trademarks, and caused significant damage to Klein's business relationships.

150. As a proximate result of Defendants' actions, Klein has suffered, and will continue to suffer, immediate and irreparable harm. Klein has also suffered, and continues to suffer, damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

151. Klein is entitled to recover its damages caused by Defendants' infringement of the Klein Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

152. Klein is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendants' infringement and, unless Defendants are permanently enjoined, Klein will suffer irreparable harm.

153. Klein is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the Klein Trademarks.

## SECOND CAUSE OF ACTION
### Unfair Competition
### 15 U.S.C. § 1125(a)(1)(A)

154. Klein hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

155. As set forth above, Defendants are selling non-genuine products bearing the Klein Trademarks that are materially different from genuine Klein products.

156.    Defendants' sale of non-genuine products bearing the Klein Trademarks is likely to cause consumer confusion and lead consumers to believe that those products are affiliated with, connected with, associated with, sponsored by, or approved by Klein when they are not.

157.    Defendants' sale of non-genuine products bearing the Klein Trademarks is likely to cause consumer confusion and lead consumers to believe that the products are genuine Klein products when they are not.

158.    Defendants' conduct constitutes unfair competition under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

159.    Klein is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendants' unfair competition and, unless Defendants are permanently enjoined, Klein will suffer irreparable harm.

160.    Klein is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith engaged in unfair competition.

## THIRD CAUSE OF ACTION
### Violation of the Illinois Uniform Deceptive Trade Practices Act
### 815 ILCS 510/1 – 510/7

161.    Klein hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

162.    Klein is the owner of the Klein Trademarks.

163.    Klein has registered the Klein Trademarks with the United States Patent and Trademark Office.

164.    The Klein Trademarks are valid and subsisting trademarks in full force and effect.

165. Defendants willfully and knowingly used, and continue to use, the Klein Trademarks in interstate commerce, including through their product listings on Amazon, for the purpose of advertising, promoting, and selling products bearing the Klein Trademarks without Klein's consent.

166. Defendants' advertisements and promotions of products unlawfully using the Klein Trademarks have been disseminated to the relevant purchasing public.

167. Defendants use the Klein Trademarks with the intent that consumers will rely on their use of the Klein Trademarks and believe that they are selling genuine Klein Products.

168. Klein has not authorized Defendants to advertise, promote, or sell products bearing the Klein Trademarks, and Klein does not know the source of the products Defendants are/have been selling.

169. The products Defendants advertise, promote, and sell bearing the Klein Trademarks are not covered by the Klein Warranties.

170. Klein has established substantial quality control procedures that genuine Klein Products must comply with.

171. Klein abides by these quality control procedures and requires all Authorized Sellers to abide by them as well. Klein's quality controls are legitimate and material, as they protect consumers from receiving poor quality products that could harm them. When a consumer considers whether to purchase a product bearing the Klein Trademarks, the applicability of Klein's quality controls to the product is relevant and material to the consumers' purchasing decision.

172. The products bearing the Klein Trademarks that Defendants advertise, promote, and sell are not subject to, do not abide by, and interfere with Klein's quality controls and customer service requirements.

41

173.    Because the products Defendants advertise, promote, and sell bearing the Klein Trademarks are not covered by the Klein Warranties, and are not subject to, do not abide by, and interfere with Klein's quality controls and customer service requirements, the products Defendants sell are materially different from genuine Klein Products sold by Authorized Sellers.

174.    Because the products Defendants advertise, promote, and sell bearing the Klein Trademarks are materially different from Klein Products sold by Authorized Sellers, the products Defendants sell are not genuine Klein Products.

175.    Defendants' unauthorized advertisement, promotion, and sale of products bearing the Klein Trademarks interfere with Klein's quality controls and ability to exercise quality control over products bearing the Klein Trademarks.

176.    Defendants' unauthorized advertisement, promotion, and sale of products bearing the Klein Trademarks are likely to cause confusion, cause mistake, and/or deceive consumers because Defendants' use of the Klein Trademarks suggests that the products Defendants offer for sale are subject to and compliant with Klein's quality controls when, in fact, they do not and are not.  Defendants' unauthorized advertisement, promotion, and sale of products bearing the Klein Trademarks are likely to cause confusion, cause mistake, or deceive consumers because Defendants' use of the Klein Trademarks suggests that the products Defendants offer for sale are genuine Klein Products when, in fact, they are not.

177.    Defendants' unauthorized advertisement, promotion, and sale of products bearing the Klein Trademarks are likely to cause confusion or misunderstanding among consumers because Defendants' use of the Klein Trademarks suggests that the products Defendants offer for sale are sourced from, sponsored by, approved by, or certified by Klein when, in fact, they are not.

42

178. Defendants' unauthorized advertisement, promotion, and sale of products bearing the Klein Trademarks are likely to cause confusion or misunderstanding among consumers because Defendants' use of the Klein Trademarks suggests that the products Defendants offer for sale are affiliated with, connected with, associated with, or certified by Klein when, in fact, they are not.

179. Defendants' unauthorized and deceptive use of the Klein Trademarks is material and likely to influence customers to purchase the products Defendants sell, as consumers are likely to believe that products Defendants advertise using the Klein Trademarks are genuine Klein Products that are subject to, and abide by, Klein's quality-control requirements and come with benefits associated with genuine Klein Products when, in fact, they do not.

180. Defendants' unauthorized use of the Klein Trademarks in advertising and otherwise infringes the Klein Trademarks.

181. Defendants' use of the Klein Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the Klein Trademarks is a deceptive trade practice under 815 ILCS 510/2. As a result of Defendants' conduct, Klein has suffered, and continues to suffer, immediate, and irreparable harm. This immediate and irreparable harm includes damage to brand goodwill when consumers receive poor-quality products and post negative reviews that will remain on Amazon permanently, harming Klein's reputation among consumers and placement in online search results.

182. Klein has also suffered, and continues to suffer, damages including, but not limited to, loss of business, diminished goodwill, reputational harm, and decreased profits in an amount to be proven at trial.

183.    Pursuant to 815 ILCS 510/3, Klein is entitled to an injunction enjoining Defendants' unlawful conduct, and an award of attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**Common Law Trademark Infringement**

184.    Klein hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

185.    Klein is the owner of the Klein Trademarks.

186.    Klein has registered the Klein Trademarks with the United States Patent and Trademark Office.

187.    The Klein Trademarks are valid and subsisting trademarks in full force and effect.

188.    The Klein Trademarks are distinctive and widely recognized by the consuming public. Klein Products are sold and purchased through its Authorized Sellers throughout the United States, including in Illinois.

189.    Klein is widely recognized as the designated source of goods bearing the Klein Trademarks.

190.    Defendants willfully and knowingly used, and continue to use, the Klein Trademarks in interstate commerce for purposes of selling products bearing the Klein Trademarks without Klein's consent.

191.    The products bearing the Klein Trademarks that Defendants sell are not authorized for sale by Klein.

192.    Defendants' use of the Klein Trademarks in connection with their unauthorized sale of products is likely to cause confusion, cause mistake, or deceive consumers because it falsely suggests that the products offered for sale by Defendants are the same as genuine products

44

legitimately bearing the Klein Trademarks and originate from, or are sponsored by, authorized by, or otherwise connected with Klein when they are not.

193. Defendants' use of the Klein Trademarks in connection with their unauthorized sale of products is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendants offer for sale are genuine Klein products.

194. The products sold by Defendants are not, in fact, genuine Klein products. The products sold by Defendants are materially different from genuine Klein products because, among other reasons, they are not covered by the Klein Warranties and are not subject to, do not abide by, and interfere with Klein's quality control requirements.

195. Defendants' unauthorized use of the Klein Trademarks has infringed upon and materially damaged the value of the Klein Trademarks, and caused significant damage to Klein's business relationships.

196. As a proximate result of Defendants' actions, Klein has suffered, and will continue to suffer, irreparable harm, as well as damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

197. Klein is entitled to recover its damages caused by Defendants' infringement of the Klein Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

198. Klein is entitled to recover punitive damages because Defendants have acted with fraud and actual malice, or with such gross negligence as to indicate a wanton disregard of Klein's rights.

## FIFTH CAUSE OF ACTION
**Tortious Interference with Existing Contracts and Business Relationships**

199.     Klein hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

200.     Klein allows its products to be sold to end-user consumers in the United States only by sellers whom Klein has expressly authorized to sell Klein products

201.     Klein has entered into valid and enforceable agreements with its Authorized Sellers to sell Klein Products.  These agreements specifically prohibit Authorized Sellers from selling Klein Products to unauthorized resellers such as Defendants.

202.     Defendants are not Authorized Sellers of Klein Products and Klein itself has not sold any Klein products to Defendants.  Despite this, Defendants have sold and are continuing to sell a high volume of products bearing the Klein Trademarks on the Internet.  The only plausible way Defendants could be obtaining the volume of products they are reselling is by purchasing them from one or more Authorized Sellers.

203.     Thus, upon information and belief, Defendants have purchased Klein products from Authorized Sellers for the purpose of reselling them on the Internet.

204.     By purchasing products from Authorized Sellers and then reselling them on the Internet, Defendants caused and induced Authorized Sellers to breach their agreements with Klein.

205.     Defendants have known that Klein's contracts with its Authorized Sellers prohibit Authorized Sellers from selling products to non-Authorized Sellers, such as Defendants, whom the Authorized Sellers know or have reason to know are going to resell the products.

206.     Defendants have known of this prohibition, among other reasons, because Klein informed Defendants of this prohibition in a cease-and-desist letter it sent to JJS by overnight delivery on October 11 2022.

46

207. Despite having knowledge of this prohibition, Defendants intentionally, knowingly, and willfully interfered with Klein's agreements with its Authorized Sellers by continuing to induce Authorized Sellers to breach their agreements and sell products to Defendants that Defendants resold on the Internet.

208. In interfering with Klein's agreements, Defendants acted without justification and with a wrongful purpose. Defendants purchased Klein products from Authorized Sellers —and in so doing, instigated a breach of Authorized Sellers' agreements with Klein—so that Defendants could unlawfully infringe upon and materially damage the value of the Klein Trademarks by reselling the products on the Internet, thereby committing an independent tort.

209. Klein's agreements with its Authorized Sellers are a specific class of contract that Defendants are causing Authorized Sellers to breach when they purchase products from Authorized Sellers for resale. Although Klein does not yet know which specific Authorized Seller(s) have breached their agreements with Klein—and indeed cannot learn that information with certainty until it is able to take discovery from Defendants in this action—Defendants know from whom they obtained the products they have resold and are on notice of the basis for Klein's claim of tortious interference.

210. Defendants are not parties to the contracts they caused Authorized Sellers to breach.

211. Defendants' actions have caused injury to Klein for which Klein is entitled to compensatory damages in an amount to be proven at trial.

212. The injury to Klein is immediate and irreparable, as Klein's reputation and relationships have been damaged among its consumers and Authorized Sellers.

213.    Klein is also entitled to recover punitive damages because Defendants have acted with fraud and actual malice, or with such gross negligence as to indicate a wanton disregard of Klein's rights.

**PRAYER FOR RELIEF**

WHEREFORE, Klein prays for relief and judgment as follows:

A.    Judgment in favor of Klein and against Defendants in an amount to be determined at trial including, but not limited to, compensatory damages, statutory damages, treble damages, liquidated damages, restitution, including disgorgement of profits, and pre-judgment and post-judgment interest, as permitted by law;

B.    Preliminary and permanent injunctions enjoining Defendants and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendants, and all of those in active concert and participation with Defendants (the "Enjoined Parties") as follows:

    i)    Prohibiting the Enjoined Parties from advertising or selling, via the Internet or otherwise, all products bearing the Klein Trademarks;

    ii)    Prohibiting the Enjoined Parties from using any of the Klein Trademarks in any manner, including advertising on the Internet;

    iii)    Prohibiting the Enjoined Parties from importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all products bearing any of the Klein Trademarks;

    iv)    Prohibiting the Enjoined Parties from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any

48

products sold by them which contain the Klein Trademarks including invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing these trademarks;

v)     Requiring the Enjoined Parties to take all action to remove from the Enjoined Parties' websites any reference to any of Klein's products, or any of the Klein Trademarks;

vi)     Requiring the Enjoined Parties to take all action, including but not limited to, requesting removal from the Internet search engines (such as Google, Yahoo, and Bing), to remove from the Internet any of the Klein Trademarks which associate Klein's products or the Klein Trademarks with the Enjoined Parties or the Enjoined Parties' websites;

vii)     Requiring the Enjoined Parties to take all action to remove the Klein Trademarks from the Internet, including from the website www.amazon.com; and

viii)     Requiring the Enjoined Parties to destroy or return to Klein all products bearing the Klein Trademarks in their possession, custody, or control.

C.     An award of attorneys' fees, costs, and expenses.

D.     Such other and further relief as the Court deems just, equitable and proper.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Klein demands a trial by jury on all issues so triable.

Dated: March 19, 2023            Respectfully submitted,

*/s/ Daniel C.F. Wucherer*
Daniel C.F. Wucherer
VORYS, SATER, SEYMOUR AND PEASE LLP
301 E. 4th Street, Suite 3500
Cincinnati, OH 45202
Tel: (513) 723-4093; Fax: (513) 852-7811
dcwucherer@vorys.com

Matthew Jason Singer
MATT SINGER LAW, LLC
77 W. Wacker Drive, Suite 4500
Chicago, IL 60601
Tel: (312) 248-9123
matt@mattsingerlaw.com

**Attorneys for Plaintiff Klein Tools, Inc.**